IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL EUGENE OGDEN, § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | CIVIL ACTION NO. H-04-0444 |
| § | |
| DOUGLAS DRETKE, DIRECTOR, TEXAS § | |
| DEPARTMENT OF CRIMINAL § | |
| JUSTICE, CORRECTIONAL § | |
| INSTITUTIONS DIVISION, § | |
| § | |
| Respondent. § | |

**MEMORANDUM AND ORDER DENYING PETITIONER'S
§ 2254 APPLICATION FOR WRIT OF HABEAS CORPUS**

Before the Court in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Answer (Document No. 4) to Petitioner Michael Eugene Ogden's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the Answer, the claims raised by Petitioner, the conviction pursuant to which Petitioner is incarcerated, and the applicable law, the Court ORDERS, for the reasons set forth below, that Petitioner's Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and that this case is DISMISSED WITH PREJUDICE.

I.      **Introduction and Procedural History**

Michael Eugene Ogden ("Ogden") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of 1979 murder convictions in the 208th District Court of Harris County, Texas, Cause No. 288621, for which he was sentenced to life imprisonment. *See* State Court Judgment (Document No. 7). Ogden is not challenging the validity of that conviction herein; rather, Ogden is challenging the validity of a prison disciplinary proceeding,

disciplinary case no. 20040043552, in which he was found guilty of threatening an officer, and which resulted in: 1) a loss of 365 days of good conduct time, 2) 15 days of solitary confinement, and 3) a reduction in earning class from S3 to L2. Ogden filed both a step one and a step two grievance, challenging the disciplinary proceeding. The step one grievance, filed on October 22, 2003, was denied on November 12, 2003. The step two grievance, filed on November 17, 2003, was denied on December 1, 2003. This § 2254 proceeding, filed by Ogden on or about February 4, 2004, the date the § 2254 application was file-stamped as received by the Clerk of this District, followed.

Respondent has filed an Answer (Document No. 4), asserting therein that Ogden has failed to state a claim for which relief is available under 28 U.S.C. § 2254. Ogden has filed a Traverse in response (Document No. 6), and an Amended Response (Document No. 9). This § 2254 proceeding is now ripe for ruling.

## II. Claims

Ogden alleges in this proceeding that his due process rights were violated during and in relation to prison disciplinary proceeding no. 20040043552, because:

(1) the counsel substitute appointed to assist him with the disciplinary hearing was ineffective;

(2) the charging officer filed a false disciplinary report; and

(3) the officer who investigated the disciplinary charge was the same officer who presided over the disciplinary hearing.

## III. Discussion

The claims Ogden raises in this § 2254 proceeding are not cognizable in this § 2254 federal

habeas corpus proceeding. Even if they were, Ogden has not stated a viable due process claim.

Federal habeas corpus relief pursuant to 28 U.S.C. § 2254 is available to remedy constitutional violations which affect the "fact or duration" of an individual's physical imprisonment. *Presier v. Rodriguez*, 411 U.S. 475, 500 (1973). Federal habeas corpus relief pursuant to 28 U.S.C. § 2254 is not available to remedy alleged constitutional violations which would not lead to either 1) an automatic shortening of an individual's sentence or 2) the individual's immediate release. *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996)).

In this case, Ogden is not complaining about the fact or duration of his confinement. Rather, Ogden is complaining about a disciplinary proceeding, the result of which had no effect on Ogden's sentence or the validity of his confinement. The fifteen days of solitary confinement Ogden was assessed in connection with the disciplinary proceeding had no effect on the sentence Ogden is serving and the absence of such discipline would not have led to the shortening of Ogden's sentence or his immediate release. In addition, Ogden's reduction in class from S3 to L2, while having the potential to affect Ogden's ability to earn good time credits towards an early release on parole, did not invariably affect the length of Ogden's sentence, and therefore does not provide a basis for § 2254 relief. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995). Finally, with respect to Ogden's loss of 365 days of good time credit, because Ogden is not eligible for mandatory supervision,[1] the loss of those 365 days of good time credit had no effect on Ogden's sentence or his

---

[1] Because Ogden is serving a sentence of life imprisonment, he is not eligible for mandatory supervision release. *See Ex Parte Franks*, 71 S.W.3d 327, 328 (Tex. Crim. App. 2001) ("We hold that a life-sentenced inmate is not eligible for release to mandatory supervision" because "it is

release date. *See Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997) (if petitioner is not eligible for mandatory supervision under Texas law, he has no cognizable claim in a § 2254 proceeding for loss of good time credits); *Campos v. Johnson*, 958 F. Supp. 1180, 1190 (W.D. Tex. 1997) ("[I]nsofar as petitioner, whose [sic] is statutorily ineligible for release on mandatory supervision, may have been improperly deprived of good time credits, that claim does not provide a basis for federal habeas corpus relief"). Accordingly, Ogden's claims are not cognizable or redressable under 28 U.S.C. § 2254.

Even if Ogden's claims were cognizable under 28 U.S.C. § 2254, no relief would be available to Ogden on the merits of such claims because such Ogden's claims do not rise to the level of a due process violation as a matter of law. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court held that inmates, in the context of a prison disciplinary proceeding, are entitled to the following due process guarantees: (1) 24 hours written advance notice of the disciplinary charge(s); (2) a written statement of the factfinders as to the evidence relied on and the reason(s) for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense of the charges. In *Sandin v. Connor*, 515 U.S. 472, 485-86 (1995), however, the United States Supreme Court modified the requirements set forth in *Wolff v. McDonnell*, when it held that a prisoner's due process liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Thus, under *Sandin*, *Wolff's* three due

---

mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life."); *see also Arnold v. Cockrell*, 306 F.3d 277, 278 (5th Cir. 2002).

4

process requirements apply in the prison disciplinary context only when the punishment imposed affects the length of the inmate's sentence and/or represents an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996); *e.g.*, *Spicer v. Collins*, 9 F.Supp.2d 673, 685 (E.D. Tex. 1998) (Cell and commissary restrictions "do not deprive plaintiff of a protected liberty interest and, therefore, plaintiff was not entitled to due process during the disciplinary proceedings"). Punitive disciplinary measures such as cell restriction, loss of commissary privileges, extra work duties, and even confinement in disciplinary segregation do not pose the type of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that will implicate the protections of the Due Process Clause. *Sandin*, 515 U.S. 485-86 (administrative segregation did not implicate due process); *Madison*, 104 at 767 (5th Cir. 1997) (cell and commissary restrictions "are penalties which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest"); *Bulger*, 65 F.3d at 49-50 (inmates have no protectable interest in their work assignments). In addition, an inmate's change in classification and/or a deprivation of the opportunity to earn good time credits will not implicate the protections of the Due Process Clause. *See Luken*, 71 F.3d at 193 ("The loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [an inmate's] custodial status. Yet, such speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests"); *Bulger,* 65 F.3d at 50 (an inmate's loss of the ability to accrue good time credits does not inevitably affect the length of his sentence); *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("'Inmates have no protectable property or liberty interest in custodial

5

classifications'"). Similarly, while the loss of good time credits *may* implicate due process concerns,[2] where the prisoner is ineligible for mandatory supervision, and the good time credits can only be applied to the prisoner's eligibility for parole, the prisoner has not stated a claim, as a matter of law, for violation of his constitutional due process rights. *Spicer v. Collins*, 9 F.Supp.2d 673, 685 (E.D. Tex. 1998) ("As a general rule, only sanctions which result in loss of good conduct time credits for inmates who are eligible for mandatory supervision or which otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest."); *Madison*, 104 F.3d at 769 (directing, upon remand, that if it is determined that Madison is not eligible for mandatory supervision, the dismissal of Madison's due process claims may be reinstated).

Because Ogden is not eligible for mandatory supervision, and because none of the punishment meted out to Ogden as a result of his disciplinary infraction raises due process concerns under *Sandin*, Ogden is not entitled to any relief in this proceeding. *See e.g. Arnold*, 306 F.3d 277, 279 (5th Cir. 2002).

## IV.  Conclusion and Order

Based on the foregoing, and the conclusion that no relief is available to Petitioner on the claims he has asserted in this proceeding pursuant to 28 U.S.C. § 2254, the Court

ORDERS that Petitioner Michael Eugene Ogden's Application for Writ of Habeas Corpus

---

[2] In *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000), the Fifth Circuit determined that "there is a constitutional expectancy of early release created by Texas's mandatory supervision scheme in place prior to September 1, 1996 for earned good time credits."  While the Fifth Circuit has not expressly stated that those who are statutorily *ineligible* for mandatory release have no *constitutional* expectancy in early release, statutory ineligibility for mandatory supervision would, *a fortiori*, vitiate a prisoner's expectancy of early mandatory supervision release.

(Document No. 1) is DENIED, and this case is DISMISSED WITH PREJUDICE. It is further

ORDERED that a Certificate of Appealability is DENIED. A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001). When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

Given the claims raised herein, as well as the conviction pursuant to which Petitioner is incarcerated, the Court determines that reasonable jurists would not find the assessment of

Petitioner's claims to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 31st day of August, 2005.

_____
Frances H. Stacy
United States Magistrate Judge